IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**RANDALL RAY PAXTON,**

    **Plaintiff,**

v.                                        **Civil Action No. 2:18-cv-00493**

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10) and Defendant's Brief in Support of Defendant's Decision (ECF No. 11). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's applications for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

Background

Claimant, Randall Ray Paxton, filed applications for DIB and SSI on December 9, 2014, alleging disability since May 20, 2014. The claims were denied initially on May 5, 2015, and upon reconsideration on August 27, 2015. Claimant filed a request for hearing on October 13, 2015. A hearing was held on July 28, 2017, in Charleston, West Virginia. An Administrative Law Judge (ALJ) presided over the hearing. The ALJ denied Claimant's applications on October 2, 2017. On November 22, 2017, Claimant requested a review of the ALJ's decision by the Appeals Council (AC). The AC denied Claimant's request for review on February 16, 2018. On

March 28, 2018, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

## Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2018). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a), 416.920. The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* §§ 404.1520(b), 416.920. If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* §§ 404.1520(c), 416.920. If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* §§ 404.1520(d), 416.920. If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* §§ 404.1520(e), 416.920. By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.

20 C.F.R. §§ 404.1520(f), 416.920 (2018).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since June 1, 2014, the amended alleged onset date (Tr. at 15). Claimant meets the insured status requirements of the Social Security Act through December 31, 2019.  (*Id.*)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairment status post right calcaneus fracture. (*Id.*)  At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 18).  The ALJ then found that Claimant has a residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he can occasionally climb ladders, ropes and scaffolds; he can frequently climb ramps and stairs.  He is unable to use his right lower extremity to operate pedals or foot controls (Tr. at 18-19).  The ALJ found that Claimant can perform past relevant work as a dishwasher (Tr. at 22).  The ALJ stated "This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity."  (*Id.*) On this basis, Claimant's application was denied (Tr. at 23-24).

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere

> scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A further review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

### Claimant's Background

Claimant was born on May 12, 1962. He lives in an apartment with his two sons, ages 18 and 26 (Tr. at 52). Claimant last completed the 10th grade and attended special education classes (Tr. at 233).

### Medical Record

The medical record has been adopted, as set out in the Claimant's Brief, Defendant's Brief and the ALJ's decision to the extent as follows:

Claimant went to Saint Francis Hospital on June 2, 2014, after falling off a roof and injuring his ankle the day before (Tr. at 323-350). An x-ray of his right foot revealed a comminuted facture of the calcaneal bone and suspected fracture at the base of the second metatarsal bone (Tr. at 324, 326). Claimant was given a splint, referred to an orthopedic specialist and was advised to remain non-weight bearing until he was cleared by an orthopedic

physician (Tr. at 340, 350).

On June 18, 2014, Aaron Sop, M.D., at Charleston Area Medical Center performed an open reduction internal fixation (ORIF) procedure on Claimant's right heel (Tr. 354). The day after surgery, Claimant ambulated well with physical therapy while remaining non-weight bearing on his right lower extremity. (*Id.*)

Claimant saw Dr. Sop for a follow up appointment on February 9, 2015 (Tr. at 373). At that time, Claimant reported persistent pain in his right hindfoot that limited his ability to perform activities (Tr. at 373). An x-ray of the hindfoot revealed anatomic alignment with no evidence of hardware failure or loosening (Tr. at 20, 373). Examination showed intact sensation, intact motor testing of the hallucis longus, tibialis anterior, and gastrocsoleus. Additionally, Claimant had 10 degrees of dorsiflexion, 50 degrees of plantar flexion, and 10 degrees of subtalar motion (Tr. at 373). Dr. Sop noted that pain was Claimant's limitation and he could perform activities as tolerated as the fracture was healed in an anatomic alignment. (*Id.*) He was instructed to take anti-inflammatory mediations as need. (*Id.*)

Claimant established primary care medical treatment at Family Care beginning on March 10, 2015 (Tr. at 392). Claimant complained of pain in his right ankle. (*Id.*) At follow up appointments in April, August, and November 2015, Claimant continued to complain of ankle pain, but had normal movement of all extremities, no edema and no tenderness (Tr. at 387, 392, 403). Claimant was prescribed Tramadol and Gabapentin for pain (Tr. at 387, 390, 404).

On May 2, 2015, state agency physician Rabah Boukemis, M.D., reviewed the record and requested a more recent assessment or follow up with orthopedics to assess the healing and post-trauma osteoarthritis in Claimant's ankle (Tr. at 70, 82). He did not perform a residual

functional capacity (RFC) assessment (Tr. at 70, 82).

State agency physician Hedy Mountbatten-Windsor, M.D., reviewed the record on August 25, 2015, and stated that after reviewing additional evidence, she assessed an RFC with standing/walking limitations, as well as postural and environmental limitations (Tr. 97, 111). She did not list specific limitations and did not state that Claimant required an assistive device. (*Id.*)

On February 23, 2016, Claimant was seen at Family Care by Christy Estep, DO, and reported that he was no longer following up with his orthopedist (Tr. at 400). Claimant stated that he was able to perform his activities of daily living with medication, but he used a cane for ambulation and requested a custom shoe for his right foot. (*Id.*) He had tenderness to palpation and some decreased dorsiflexion in the right foot but normal range of motion in all extremities (Tr. at 401). His provider prescribed an orthotic shoe and continued Tramadol and Gabapentin. (*Id.*)

On July 5, 2016, Claimant reported to Family Care that he had not yet obtained the custom shoe and had filed for disability (Tr. at 407). He presented with a cane and his Family Care provider noted decreased motor strength and range of motion due to complaints of pain and tenderness to his right foot (Tr. at 407-408). Claimant reported that he no longer sees his orthopedist, Dr. Sop (Tr. at 408). He was prescribed an increased dose of Tramadol, continued on Gabapentin and referred to pain management. (*Id.*)

As of October 11, 2016, Claimant still had not obtained an orthotic shoe for his right foot and reported to his primary care physician, Dr. Estep, in a follow up appointment that he no longer follows up with an orthopedist (Tr. at 413). He presented with a cane and his right foot had limited range of motion, decreased strength and tenderness to palpation in the right

foot and ankle, but no edema. (*Id.*) An orthopedic shoe was ordered, he was referred to orthopedic and he was to continue Gabapentin and Tramadol and undergo an x-ray (Tr. at 414).

On December 16, 2016, Claimant reported to Dr. Estep that he experienced pain and presented at the appointment with a cane. (*Id.*) He had not obtained an orthotic shoe (Tr. at 410). He reported that Gabapentin and Tramadol helped some. (*Id.*)

On February 7, 2017, Claimant followed up with Dr. Estep (Tr. at 418). He used a cane to walk but had normal movement in all extremities and no edema. (*Id.*) He again reported that Gabapentin and Tramadol helped some, and he was advised to get a custom shoe. At an appointment with a social worker later that month, Claimant appeared at times to be "exaggerating" his issues (Tr. at 423). On March 21, 2017, his social worker noted that he appeared to walk without pain when walking down the hallway to his appointment (Tr. at 420). Claimant stated he had pain when on his feet for a long time and expressed "resistance towards the idea his life could improve." (*Id.*)

On May 9, 2017, Claimant saw Dr. Estep and ambulated with a cane but still had not obtained a custom shoe (Tr. at 427). Claimant no longer follows up with orthopedist Dr. Sop and requested to see someone else (Tr. at 426). On examination, Claimant had limited range of motion in his right foot with tenderness to palpation (Tr. at 427). He was advised to get a custom shoe, continue Gabapentin and Tylenol as needed and was referred to orthopedics. (*Id.*)

On June 12, 2017, Claimant was treated by Bruce F. Haupt, M.D., at Thomas Health System Physician Partners (THSPP) Orthoclinic (Tr. at 428-429). He complained of foot swelling and pain and stated his right ankle frequently gave out (Tr. at 428). Dr. Haupt noted that Claimant's gait was significantly antalgic, but made no mention of a cane (Tr. 429). He further noted some tenderness of the subtalar joint; decreased range of motion in the right ankle

50 percent decreased inversion/eversion strength in the right ankle; but reported no instability. (*Id.*) Examination further revealed 5/5 muscle strength in the foot and ankle, normal bulk, tone, sensation, and reflexes, and no tenderness, swelling or deformities. Claimant had no joint instability on provocation testing and a negative Thompson's test. (*Id.*) X-rays of his right ankle revealed a normal appearing ankle joint with plate in good position and fracture healed. The possibility of additional surgery was discussed, but no further treatment records were contained in the record. (*Id.*)

### Claimant's Challenges to the Commissioner's Decision

Claimant argues that the ALJ's residual functional capacity (RFC) assessment is not supported by substantial evidence since the ALJ failed to properly address whether Claimant's case was medically necessary or if it affected Claimant's ability to perform work (ECF No. 10). In response, Defendant asserts that "substantial evidence supports the ALJ's RFC assessment where [Claimant] failed in his burden of providing that his cane was 'medically required'" (ECF No. 11). Defendant avers that SSR 96-9p details specific requirements a claimant must meet to establish the medical requirement of an assistive device. (*Id.*) Furthermore, Defendant asserts that the ALJ thoroughly reviewed the evidence prior to determining that the record failed to support that a cane was medically required.

### Claimant's Testimony

Claimant testified he was injured after falling from a two-story home while repairing an air conditioner (Tr. at 48). He indicated he landed on his feet and required surgery on his right foot. Claimant stated that since that time, his foot continued to be painful and to swell, impairing his ability to walk, stand and wear shoes during flares. He described pain that radiated up his leg and stated his foot would "lock[] up." Claimant estimated that he could

stand for 20 minutes before needing to sit down due to pain and swelling and would need to sit for at least 20 minutes before standing again (Tr. at 49, 53). He stated he spent more time sitting than standing during the day (Tr. at 49). He also stated that walking was worse than standing (Tr. at 53).

Claimant stated he lived with his two adult sons in a first-floor apartment that did not require him to use stairs (Tr. at 50, 52). He stated he had difficulty using stairs and required a handrail and one of his sons to help him (Tr. at 50). Claimant confirmed that since his injury, he had used a cane, both inside and outside of the home (Tr. at 51-52). He described pain and swelling even when he had not been walking (Tr. at 52). He stated that with overuse, the swelling would not subside for a day, and he would need to lie down, elevate his foot and apply ice (*Id.*)

Claimant testified that his doctor had recommended exercising, but it had not helped (Tr. at 54). He stated he anticipated an updated CT scan and was waiting to hear from the doctor's office. (*Id.*) He stated he had been fitted for a custom, orthopedic shoe but did not have the money to get it (Tr. at 55-56).

### Vocational Expert Testimony

A vocational expert (VE) identified Claimant's past relevant work as a dishwasher at the unskilled medium level and a janitor at the unskilled light level (Tr. at 57). The VE testified that a hypothetical individual with the ALJ's controlling RFC could perform Claimant's past work as a janitor and a dishwasher (Tr. at 59). The VE also provided other representative unskilled jobs in the national economy the individual could perform at the medium and light levels (Tr. at 58). When asked whether the individual could perform these jobs if a cane was needed to ambulate, the VE responded that such an individual would be limited to sedentary

jobs. (*Id.*)

## Discussion

A RFC refers to the most a claimant can still do despite his limitations and is an assessment that is based upon all the relevant evidence, including Claimant's own descriptions of symptoms. 20 C.F.R. §§ 404.1545(a), 416.945(a). At the hearing level, the responsibility for determining a claimant's RFC is reserved to the ALJ, who will not give any special significance to the source of another opinion on this issue. 20 C.F.R. §§ 404.1527(d)(2), (3), 404.1546, 416.927(d)(2), (3), 416.946. The ALJ is not required to base an RFC assessment on a specific medical opinion but may base the assessment on the record as a whole. *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011).

SSR 96-9p, 1996 WL 374185, at *7, addresses hand-held assistive devices as they relate to a claimant's RFC. SSR 96-9p requires the ALJ to consider only "medically required" devices and provides guidance about the required documentation:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed.

*Id.* While SSR 96-9p only applies to claimants capable of less than a full range of sedentary work, "district courts within the Fourth Circuit consistently rely on it for guidance when a claimant alleges that a hand-held assistive device was not properly considered in his or her RFC determination." *Schnurpel v. Berryhill*, No. 2:16-CV-06042, 2017 WL 2390548, at *13 (S.D.W.Va. Apr. 17, 2017), adopted by 2017 WL 2389396 (S.D.W. Va. June 1, 2017) (citing cases). Thus, an assistive device, such as a cane, must be medically "*required*" for it to affect a claimant's RFC. *Joines v. Colvin*, No. 3:14-cv-00396-MOC, 2015 WL 1249597, at *6 (W.D.N.C. Mar. 18, 2015) (emphasis in original).

District Courts have held that even if an assistive device such as a cane is prescribed, it does not necessarily follow that it is "medically required" as defined in the rulings. *Joines*, 2015 WL 1249597, at *6; Morgan v. Comm'r, Soc. Sec., No. JKB-13-2088, 2014 WL 1764922, at *1 (D. Md. Apr. 30, 2014); *Timmons v. Colvin,* No. 3:12CV609, 2013 WL 4775131, at *8 (W.D.N.C. Sept. 5, 2013); *Wimbush v. Astrue*, No. 4:10CV00036, 2011 WL 1743153, at *3 (W.D. Va. May 6, 2011) ("Thus, even if a cane is prescribed, it does not necessarily follow that it is medically required.").

A claimant must provide documentation from an acceptable medical source establishing the need for an assistive device and describing the circumstances for which it is needed. SSR 96-9p, 1996 WL 374185, at *7. "If the claimant fails to supply appropriate documentation, the ALJ need not include the use of an assistive walking device in the RFC assessment. *Helms v. Berryhill*, No. 3:16CV189 (MHL), 2017 WL 3038154, at *8 (E.D. Va. June 30, 2017), adopted by 2017 WL 3032216 (E.D. Va. July 17, 2017). "Courts have held claimants to a high burden in supplying the appropriate documentation." *Id.* (citing cases). *See also Hughes v. Berryhill*, No. 2:17-CV-01983, 2017 WL 4854112, at *14 (S.D.W. Va. Oct. 4, 2017), adopted *Thompson v. Berryhill*, 2017 WL 4849116 (S.D.W. Va. Oct. 26, 2017) (claimant failed in her burden of proving that an assistive device was medically necessary, where she provided no explanation to merit a finding it was "medically required").

Claimant testified that the cane he used at the hearing was not prescribed to him (Tr. at 51). Claimant testified that although he was prescribed a custom shoe for his right foot, he did not get the shoe due to lack of money (Tr. at 55-56). However, the ALJ was not required to accept Claimant's statements or presentation with a cane as definitive on the issue of being "medically required." The record lacked documentation establishing the need for the device or a description

of the required circumstances for which the device was needed. "Self-reports and references in the record from physicians that a claimant presented with an assistive device are not sufficient; there must be 'an unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary.'" *Johnson v. Berryhill*, No. 2:15CV00028, 2017 WL 722063, at *9 (W.D. Va. Feb. 23, 2017) (citing *Tripp v. Astrue*, 489 F. App'x 951, 955 (7th Cir. 2012)). Because Claimant failed to meet his burden of providing the requisite documentation, the ALJ was not required to include an assistive device in the RFC.

In regards to Claimant's assertion that the ALJ should have ordered an updated physical consultative examination of Claimant, the decision as to whether to procure a consultative examination lies within the ALJ's discretion. *See* 20 C.F.R. §§ 404.1519a, 416.919a (ALJ has discretion in determining whether to order a consultative examination); *Bishop v. Barnhart*, 78 F. App'x 265, 268 (4th Cir. 2003) ("[T]he regulations state that the ALJ has discretion in deciding whether to order a consultative examination.") (citing 20 C.F.R. § 404.1519a). Thus, an ALJ *may*, but is not required to, order a consultative examination "[i]f your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled[.]" 20 C.F.R. §§ 404.1517, 416.917.

In the present case, the ALJ had sufficient evidence to determine whether Claimant was disabled. The ALJ thoroughly considered Claimant's treatment notes, as well as Claimant's own statements including his assertion that the cane was not prescribed, that he got the cane from a friend, and that his orthopedist recommend he walk and exercise prior to finding that the evidence did not support that Claimant's cane was "medically required" (Tr. 18-22). *See* discussion *supra*. *See also Castle v. Astrue*, No. 4:10-CV-00984, 2010 WL 9593407, at *7 (S.D. Tex. Nov. 29, 2010) (ALJ did not abuse his discretion by not ordering a consultative examination, where ALJ

12

considered claimant's statements regarding use of a cane and found them not credible).

In this Circuit, it is clear that the ALJ has "a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler,* 783 F.2d 1168, 1173, (4th Cir. 1986) (citing *Walker v. Harris,* 642 F.2d 712, 714 (4th Cir.1981)). While the ALJ is free to contact physicians, psychologists or other medical sources if the record is inadequate, *see* 20 C.F.R. § 404.1512(e), the ALJ does not otherwise have an obligation to obtain additional information if the record is adequate to make a determination regarding a disability claim.

In the present case, there was evidence in the record before the ALJ regarding Claimant's use of a cane to assist him walking. The ALJ had ample evidence concerning Claimant's functional limitations. Under these circumstances, the ALJ had no obligation to order a consultative examination because there was sufficient evidence in the record to make a fair assessment of the claimant's impairments.

According to the Fourth Circuit, "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). In other words, "[a] claimant has a severe impairment if an impairment or combination of impairments significantly limits his physical or mental ability to perform basic work activities." *Monroe v. Colvin*, 826 F.3d 176, 184 n.8 (4th Cir. 2016).

Furthermore, it is Claimant's burden to prove that he is disabled. The Social Security Act states that "[a]n individual shall not be considered to be under a disability unless he furnishes such

medical and other evidence of the existence thereof as the Commissioner of Social Security may require." 42 U.S.C. §§ 423(d)(5)(A). The regulations also place the burden of proving disability on the claimant. 20 C.F.R. § 404.1512(a) ("you have to prove to us that you are… disabled"). The undersigned respectfully recommends that the District Judge find that Claimant has not met his burden of showing that his impairments have caused him functional limitations so severe as to preclude him from performing work consistent with the ALJ's residual functional capacity assessment.

Therefore, the ALJ's finding of no severe impairment is supported by substantial evidence.

## Conclusion

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10), **GRANT** Defendant's Brief in Support of Defendant's Decision (ECF No. 11), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., Senior United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Date:   December 21, 2018

_____
Dwane L. Tinsley
United States Magistrate Judge